

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MICHAEL MINK,

        Plaintiff,

    v.

MARION COUNTY JUVENILE DEPARTMENT,
FAYE FAGEL, and TODD SHELDON,

      Defendants.

Civ. No. 08-6298-AA

OPINION AND ORDER

_____

Kevin T. Lafky
Attorney at Law
Haley Percell
Attorney at Law
Lafky & Lafky
429 Court Street NE
Salem, OR 97301
    Attorneys for plaintiff

Jane E. Stonecipher
Marion County Legal Counsel
Kirstin E. Lurtz
Assistant Legal Counsel
Marion County Legal Department
555 Court Street NE
Salem, Oregon 97301
    Attorneys for defendants

AIKEN, Chief Judge:

Plaintiff filed suit under 42 U.S.C. § 1983 alleging violations of his constitutional rights to due process, equal protection, and freedom of speech; age discrimination and retaliation in violation of the Age Discrimination in Employment Act (ADEA) and Or. Rev. Stat. § 659A.030; disability discrimination and retaliation under the Americans with Disabilities Act (ADA); violations of the Family and Medical Leave Act (FMLA) and the Oregon Family Leave Act (OFLA); defamation and blacklisting under Or. Rev. Stat. § 659.805; whistleblower retaliation under Or. Rev. Stat. § 659A.203; common law tort claims for defamation, false light, and wrongful discharge; and contract claims for breach of contract and breach of the contractual duty of good faith and fair dealing. Defendants now move for summary judgment on all claims. For the reasons explained below, defendants' motion is granted in its entirety.

BACKGROUND

From December 1998 through September 2007, plaintiff was employed with Marion County's Juvenile Department ("the County"). Plaintiff's title was "Group Worker 2" in Alternative Programs, and his duties included supervising delinquent youths who performed manual labor as community service and as restitution to crime victims. Plaintiff was required to possess a commercial driver's license ("CDL") to transport youths to work locations and was

2    - OPINION AND ORDER

subject to random drug-testing for CDL holders as required by the Oregon Department of Transportation ("ODOT").

During the last five years of plaintiff's employment, he was directly supervised by defendant Todd Sheldon, the Alternative Programs Supervisor. However, Faye Fagel, the Juvenile Department Director, possessed the authority to terminate plaintiff's employment.

On January 5, 2005, plaintiff gave deposition testimony in the matter of Laird v. Marion County, Civ. No. 04-6154-HO (D. Or. 2004), a case involving a former employee's age discrimination claim against Marion County. Plaintiff did not disclose the content of his testimony to either Fagel or Sheldon, and neither defendant had actual knowledge of its content. Plaintiff was also subpoenaed to testify at trial in July of 2006, but plaintiff did not actually testify.

On June 1, 2005, plaintiff suffered a heart attack and took medical leave for approximately one month. Plaintiff's medication occasionally made him dizzy, and plaintiff claims he informed his supervisors of this condition. Plaintiff also alleges Sheldon made periodic comments about his age, such as calling him "old man" and asking him if he was getting too old for the job.

In December of 2006, Fagel announced a change in light-duty assignment policy, restricting such assignments to employees who had job-related injuries.

3    - OPINION AND ORDER

In February of 2007, plaintiff suffered additional heart complications and took medical leave for approximately one month. Plaintiff asserts that he requested light-duty work upon his return, but that Sheldon denied the request per the new light-duty assignment policy.

At some point Sheldon allegedly told plaintiff he was running low on paid vacation and sick leave, and if he did not get approval from Fagel for additional leave, he could be terminated. Plaintiff also alleges he requested donated leave time, and neither Fagel nor Sheldon sought leave donations on plaintiff's behalf, although they did so previously for a younger employee. Defendants contend that Sheldon denied the request because it was untimely and did not meet the requirements of donated leave.

On April 30, 2007, plaintiff sent an email to Sheldon to complain about illegal pesticide use by the County. Plaintiff also alleges that he complained to Sheldon about this same issue on an "ongoing basis" from 2005 to 2007.

In June of 2007, plaintiff had a dental infection that required treatment and antibiotics, causing him to take additional FMLA leave for an unspecified amount of time.

On or about June 13, 2007, plaintiff received a written reprimand for using profanity and speeding while on the job.

On August 1, 2007, plaintiff was selected for a random drug test pursuant to ODOT's CDL testing regime. Two weeks later,

4    - OPINION AND ORDER

Sheldon was notified that plaintiff's sample tested positive for methamphetamine. Sheldon immediately sent a letter to plaintiff informing him of the test results and explaining that he could not return to work until released by a Medical Review Officer.

Plaintiff complied with all requirements of the MRO and passed a "return to duty" drug and alcohol test on September 17, 2007. On September 19, 2007, plaintiff received a letter informing him that a due process meeting was scheduled to consider disciplinary action for his positive drug test. Fagel then placed plaintiff on paid administrative leave pending the due process meeting.

The due process meeting was held on September 21, 2007, with plaintiff, Fagel, and Sheldon in attendance, among others. Plaintiff presented a written statement with attached character reference statements. Plaintiff was accompanied by a union representative, who requested plaintiff be permitted to resign in lieu of termination. Soon after the meeting, Fagel decided to terminate plaintiff's employment and offered plaintiff the opportunity to resign in lieu of termination, and plaintiff chose to resign.[1] He was 57 years old at the time of his resignation.

---

[1]Plaintiff disputes that he was "allowed" to resign, because the County keeps a termination letter on record. However, it is undisputed that plaintiff was informed he could resign in lieu of termination and that plaintiff submitted a resignation letter.

5    - OPINION AND ORDER

Plaintiff's replacement was approximately 40 years old.[2]

Plaintiff submits that the County, through Faye Fagel, agreed that if he chose to resign in lieu of termination, the County would provide a neutral employment reference to prospective employers, and the County would not contest plaintiff's application for unemployment benefits.  Defendants dispute these facts.

On December 20, 2007, Marion County Legal Counsel's office received plaintiff's first tort claim notice.  Plaintiff also filed a claim with the Oregon State Bureau of Labor and Industries (BOLI), which was filed contemporaneously with the Equal Employment Opportunity Commission (EEOC).

After plaintiff resigned, he obtained a position with the Oregon Youth Authority (OYA).  A representative from OYA called Sheldon and left a message requesting a reference for plaintiff. Sheldon informed Fagel of the message.  On January 8, 2008, Fagel called Glenn Smith, OYA's Director of Human Services, and told him she needed a signed release from plaintiff before she would provide a reference.  Smith obtained a signed release and provided a copy to Fagel.  On January 9, 2008, Fagel disclosed to Smith that she allowed plaintiff to resign in lieu of termination after he tested positive for methamphetamine and admitted to its use on three occasions in the summer of 2007.  In a letter dated January 14,

---

[2]Defendant does not dispute plaintiff's assertion that he was replaced by a man who was "at least 17 years younger than Plaintiff."  Plaintiff's Memorandum of Law, p. 29.

6    - OPINION AND ORDER

2008, Smith notified plaintiff that he was being removed from his trial service at OYA.

On January 10, 2008, Kristin Lurtz and Kathy Sharp represented Marion County at an administrative hearing and opposed plaintiff's application for unemployment benefits. Fagel was unaware that the County's Human Resources Department had decided to contest plaintiff's unemployment benefits. After the administrative hearing, plaintiff was awarded unemployment benefits despite the County's opposition.

On September 25, 2008, plaintiff filed this action.

<u>SUMMARY JUDGMENT STANDARD</u>

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The materiality of a fact is determined by the substantive law on the issue. <u>T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987). The authenticity of a dispute is determined by whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). The moving party has the burden of establishing the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). If the moving party shows the

7    - OPINION AND ORDER

absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. <u>Id</u>. at 324.

Special rules of construction apply to evaluating summary judgment motions: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. <u>T.W. Elec.</u>, 809 F.2d at 630. However, the Ninth Circuit has refused to find a genuine issue of fact where the only evidence presented is "uncorroborated and self-serving" testimony. <u>Kennedy v. Applause, Inc.</u>, 90 F.3d 1477, 1481 (9th Cir. 1996).

<u>DISCUSSION</u>

A.    <u>Age Discrimination</u>

Plaintiff claims that defendants discriminated against him and terminated his employment because of his age. Specifically, he argues that he was treated differently than younger workers and was retaliated against because of his complaints of age discrimination. Plaintiff alleges claims under the federal ADEA and Oregon statutory law. <u>See</u> 29 U.S.C. § 623; Or. Rev. Stat. § 659A.030.

1.    <u>Disparate Treatment</u>

The ADEA prohibits employers from discriminating against any individual who is at least 40 years old on the basis of age. 29 U.S.C. § 623(a)(1). Claims of age discrimination under the ADEA

are evaluated under the Title VII burden-shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Wallis v. J.R. Simplot, Co., 26 F.3d 885, 888 (9th Cir. 1994).

To establish a prima facie case of age discrimination, plaintiff must demonstrate that he: 1) was a member of the protected class; 2) performed his job in a satisfactory manner; 3) was discharged; and 4) replaced by a substantially younger employee with equal or inferior qualifications, or that "the discharge occurred under circumstances giving rise to an inference of age discrimination." Coleman v. Quaker Oats Co., 232 F.3d 1271, 1281 (9th Cir. 2000) (quoting Rose v. Wells Fargo & Co., 902 F.2d 1417, 1420 (9th Cir. 1990)). In other words, plaintiff must produce sufficient evidence upon which one could find that age actually motivated the employer's decision and "had a determinative influence on the outcome." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 141 (2000) (quoting Hazen Paper Co. v. Biggins, 507 U.S. 604 (1993)).

If plaintiff presents a prima facie case, the burden shifts to the employer "to articulate some legitimate, nondiscriminatory reason" for the adverse employment action. McDonnell Douglas, 411 U.S. at 802. If the employer does so, the plaintiff must present evidence that the articulated reason is pretextual, "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the

employer's proffered explanation is unworthy of credence." <u>Chuang</u>
<u>v. Univ. of Calif. Davis, Bd. of Trustees</u>, 225 F.3d 1115, 1123-24
(9th Cir. 2000) (citing <u>Texas Dep't of Cmty. Affairs v. Burdine</u>,
450 U.S. 248, 256 (1981)); <u>see also</u> <u>St. Mary's Honor Center v.</u>
<u>Hicks</u>, 509 U.S. 502 (1993).    Despite the burden shifting, the
ultimate burden of persuasion remains on the plaintiff at all
times.  <u>Burdine</u>, 450 U.S. at 252.

     In this case, plaintiff has not established a prima facie case
of  age  discrimination.    Although  plaintiff  was  over  40,
discharged[3], and  was  replaced  with  a  substantially  younger
employee, plaintiff fails to establish that he performed his job in
a satisfactory manner.

     Defendants  emphasize  that  plaintiff  tested  positive  for
methamphetamine and admitted to using the drug on three different
occasions during the summer prior to his dismissal in violation of
County policy against illegal drug use.  Plaintiff does not dispute
these  facts.   Plaintiff's  proffered  evidence  of  job  evaluations
completed prior to his positive drug test fails to establish that
he met the objective or minimum requirements of the position at the
time of his termination.  <u>See</u> <u>Miller v. Citizens Sec. Group, Inc.</u>,

-------------------------------------------------

     [3]Although plaintiff technically submitted a letter of
resignation, he did so under threat of termination.  Therefore,
the court will treat this as a termination.  <u>See</u> <u>Knappenberger v.</u>
<u>City of Phoenix</u>, 566 F.3d 936, 941 (9th Cir. 2009).

116 F.3d 343, 346 (8th Cir. 1997) (plaintiff's conclusory allegation regarding his job performance and performance evaluations were insufficient to satisfy plaintiff's burden that he was qualified). Therefore, plaintiff fails to establish a prima facie case of age discrimination.

Even if plaintiff had met his burden, defendants submit evidence of a legitimate, non-discriminatory reason for the adverse employment action. Again, plaintiff tested positive for methamphetamine during a random drug test conducted according to ODOT policy. Defendants argue that termination was an appropriate employment action because of plaintiff's failure to comply with an important County policy and the illegality of his conduct.

Given the defendants' legitimate and non-discriminatory reason for terminating plaintiff, the burden shifts back to plaintiff to show that the defendant's proffered reason was merely pretextual. Plaintiff fails to meet this burden. Plaintiff presents no admissible evidence that younger, similarly situated employees were retained after testing positive for methamphetamine, or other facts that give rise to an inference of discrimination.[4] Sheldon's

---

[4]Plaintiff submits inadmissible hearsay evidence that another employee, Allen Volker, has "indirect knowledge of three employees of Marion County who have tested positive for drugs" and were not terminated. (Doc. 50, ¶ 9). Plaintiff also asserts in his declaration that "[o]ther Marion County employees have failed drug tests, but were not fired." (Doc. 52, ¶ 27). Plaintiff presents no evidence that this information is accurate, that those employees were younger, or that they were similarly situated; i.e. that they tested positive for methamphetamine and

alleged stray remarks of "old man" and "are you getting too old for the job?" are not sufficient to overcome the defendant's legitimate reasons for discharging plaintiff.    Plaintiff fails to show that the remarks were made sufficiently close in time to his termination or that they were made by someone with the authority to terminate plaintiff's employment.  See Nidds v. Schindler Elevator Corp., 113 F.3d 912, 918-19 (9th Cir. 1996).

In sum, plaintiff fails to establish that the circumstances of his termination give rise to an inference of age discrimination or that defendants' legitimate, non-discriminatory reasons for his termination were pretextual.

2.  Retaliation

Plaintiff also claims that he was disciplined and terminated in retaliation for his complaints of age discrimination.

The  ADEA  prohibits  retaliation  against  employees  for complaining  of  discrimination  or  participating  in  an  ADEA investigation  or  proceeding.    29  U.S.C.  § 623(d); 42 U.S.C. § 2000e-3.  In order to establish a prima facie case of retaliation, plaintiff  must  demonstrate  that:  1)  he  engaged  in  an  activity protected  under  the  ADEA;  2)  his  employer  subjected  him  to  an adverse  employment  action  after  doing  so;  and  3)  a  causal  link exists  between  the  protected  activity  and  the  adverse  employment action.    Thomas v. City of Beaverton, 379 F.3d 802, 811 (9th Cir.

worked in direct supervision of delinquent juveniles.

2004). Plaintiff need not have a valid age discrimination claim to prevail on a retaliation claim. Trent v. Valley Electric Ass., Inc., 41 F.3d 524, 526 (9th Cir. 1994).

A "protected activity" includes opposing practices or actions taken by the employer that are unlawful under the ADEA. 29 U.S.C. § 623(d). Plaintiff argues he engaged in such protected activity when he gave deposition testimony in a former co-worker's age-discrimination case against the County, Laird v. Marion County, on or about January 5, 2005. Viewing the evidence in the light most favorable to plaintiff, he arguably engaged in a "protected activity" when he gave deposition testimony allegedly unfavorable to the County in an age-discrimination case. Two years later, his employment was terminated.

Technically, plaintiff has established that he was subjected to an adverse employment action after he engaged in protected activity. However, plaintiff fails to establish a link between the actions, and therefore fails to establish a prima facie case.

"Causation sufficient to establish a *prima facie* case of unlawful retaliation may be inferred from the proximity in time between the protected action and the allegedly retaliatory discharge." Miller v. Fairchild, 797 F.2d 727, 731 (9th Cir. 1986). Plaintiff's deposition in the Laird matter was taken in January of 2005. Plaintiff was not discharged until September of 2007, over two and a half years after his deposition. Plaintiff

13  - OPINION AND ORDER

has not produced any evidence that defendants mentioned or considered his testimony in the Laird action when they terminated his employment.  No reasonable trier of fact could find a causal link between the purported protected activity and the adverse employment action.  Thus, plaintiff has not established a causal link between the protected activity and the adverse employment action, and has failed to meet his burden to establish a prima facie case of retaliation for complaining of age discrimination.[5]

B.    Family and Medical Leave Claims

Plaintiff alleges that he was terminated in retaliation for seeking medical leave, in violation of the Family Medical Leave Act and the Oregon Family Leave Act.

1.    FMLA Interference Claim

Pursuant to the FMLA, plaintiff's claim is one of "interference" rather than "retaliation" or "discrimination." Mortenson v. Pacificorp, 2007 WL 405873, *16 (D. Or. 2007) (citing Bachelder v. America West Airlines, Inc., 259 F.3d 1112 (9th Cir. 2001)).[6]  The Ninth Circuit has reasoned that an employer's

---

[5]Oregon has expressly adopted the Supreme Court's requirements for establishing a prima facie age discrimination case set out in Burdine, supra.  See Henderson v. Jantzen, Inc., 79 Or. App. 654, 656-57, 719 P.2d 1322 (1986).  Therefore, plaintiff's state law claims fail to survive summary judgment because he has not made out a prima facie case of age discrimination or retaliation.  See Hardie v. Legacy Health Systems, 167 Or. App. 425, 435, 6 P.3d 531 (2000).

[6]In Bachelder, the Ninth Circuit described FMLA claims for "retaliation" or "discrimination" as those where an employer is

14    - OPINION AND ORDER

attachment of negative consequences to an employee's exercise of medical leave rights "tends to chill" – and therefore interferes with – the employee's willingness to exercise those rights. <u>Bachelder</u>, 259 F.3d at 1124. Employers are thus prohibited from weighing the exercise of FMLA rights as a negative factor in disciplinary employment actions. 29 C.F.R. § 825.220(c). Accordingly, to survive summary judgment, plaintiff must show by a preponderance of the evidence that his use of FMLA-protected leave was a negative factor in defendant's decision to terminate his employment. <u>Phillips v. PacifiCorp</u>, 304 Fed.Appx. 527, 531 (9th Cir. 2008) (citing <u>Bachelder</u>, 259 F.3d at 1122-25).

Plaintiff does not dispute that he was granted all requested leave and that he took protected medical leave. Although plaintiff alleges in his Complaint that the County interfered with his FMLA rights by assigning him difficult jobs after his return to work and by discharging him, in response to defendants' motion, plaintiff asserts only that Sheldon threatened plaintiff with termination if he ran out of paid vacation and sick leave.

As a preliminary matter, plaintiff fails to establish by a

---

accused of discriminating against an employee for opposing practices made unlawful by the FMLA, or for instituting or participating in FMLA proceedings or inquiries. <u>Bachelder</u>, 259 F.3d at 1124. The <u>McDonnell Douglas</u> burden-shifting framework applies to claims for retaliation and/or discrimination in employment, but is inapplicable to FMLA interference claims. <u>Id.</u> at 1125. Because plaintiff asserts a "retaliation claim" based on the same facts as his interference claim, it will not be considered separately.

preponderance of the evidence that Sheldon's alleged threat occurred within the two-year statute of limitations. 29 U.S.C. § 2617(c)(1). In his declaration, plaintiff merely asserts that Sheldon made this threat "[a]t some point following [his] heart attack" in 2005 and that "[w]hen Sheldon told [him] this, [he] was nowhere near the twelve week maximum medical leave provided by law." Plaintiff did not submit evidence of the specific date of this alleged threat. Although reasonable inferences must be construed in plaintiff's favor, he has not produced any evidence from which a "reasonable" inference may be drawn that Sheldon's threat was made within the statute of limitations.

Regardless of the statute of limitations, Sheldon's alleged threat cannot support his FMLA interference claim, because plaintiff has not met his burden of showing that his taking of FMLA protected leave was a negative factor in Fagel's decision to terminate his employment. Plaintiff presents no evidence that his FMLA leave was considered or discussed at the time he was terminated. Rather, the record reflects that plaintiff was permitted and did, in fact, take medical leave on three occasions over a three-year period. Termination procedures were not undertaken until plaintiff tested positive for methamphetamine, some three months after his most recent medical leave. Plaintiff has not produced evidence from which a reasonable trier of fact could conclude that plaintiff's FMLA-protected leave was considered

16   - OPINION AND ORDER

as a negative factor his termination. Plaintiff's FMLA interference claim therefore fails to withstand summary judgment.

### 2. OFLA Retaliation Claim

Under OFLA, "[i]t is an unlawful employment practice for a covered employer to . . . [r]etaliate or in any way discriminate against an individual . . . because the individual has inquired about the provisions of [the OFLA], submitted a request for family leave, or involved any provision of [OFLA]." Or. Rev. Stat. § 659A.183(2). The OFLA is to be construed "in a manner consistent with any similar provisions of the Family Medical Leave Act." Or. Rev. Stat. § 659A.186(2)(2007). As such, because plaintiff fails to present evidence that his taking of OFLA-protected leave was a negative factor in the County's decision to terminate him, his OFLA retaliation claim also fails.

### C. Americans With Disabilities Act

Plaintiff alleges defendants discriminated against him in violation of the Americans with Disabilities Act (ADA) by failing to provide reasonable accommodation for his disability upon request and for retaliating against him for requesting reasonable accommodation.

### 1. Disability Discrimination

In order to prevail on an employment claim under the ADA, a plaintiff must establish:

> (1) that he is a disabled person within the meaning of the ADA; (2) that he is qualified, that is, with or

without reasonable accommodation (which he must
describe), he is able to perform the essential functions
of the job; and (3) that the employer terminated him
because of his disability.

Kennedy v. Applause, Inc., 90 F.3d 1477, 1481 (9th Cir. 1996).[7]

Defendants argue that plaintiff was not a "disabled person"
under the ADA. However, because I find that plaintiff fails to
present evidence that he was discharged *because* of his disability,
the court need not reach the issue of whether plaintiff was
"disabled" within the meaning of the ADA.

Plaintiff maintains he was terminated because he requested
accommodations. However, plaintiff presents little, if any,
evidence to support this assertion. In contrast, defendants
present undisputed evidence that plaintiff was discharged because
he tested positive for methamphetamine shortly after being
disciplined for speeding and using profanity on the job.
Defendants emphasize that the Juvenile Department is a law
enforcement agency, use of methamphetamine is illegal, and
plaintiff's position required direct supervision of juveniles.
Based on those reasons, defendants argue that plaintiff was not

---

[7]Congress recently amended the ADA. See ADA Amendments Act
of 2008 ("ADA-AA"), Pub. L. No. 110-325, 122 Stat. 3553 (2008).
However, the amendments did not take effect until January 9,
2009, several months after plaintiff's Complaint and after the
alleged violations occurred, and most courts have concluded that
the amendments cannot be applied retroactively. Id. § 8; see
also Moran v. Premier Educ. Group, LP, 599 F.Supp.2d 263 (D.Conn.
2009) (listing cases); Neal v. Kraft Foods Global, Inc., 2009 WL
799644, *10 (D.Or. 2009) (listing cases).

performing his job at a satisfactory level, and termination was appropriate based on the egregious nature of his conduct. Plaintiff responds that defendants' reasons are merely pretextual, and that he was actually terminated because he requested accommodation for his heart condition. However, plaintiff's allegation is unsupported by the record.

During the review process to determine whether plaintiff would be terminated, Fagel did not mention plaintiff's supposed physical limitations or plaintiff's requests for accommodations. Furthermore, plaintiff presents no evidence that Fagel, the only person with the authority to terminate plaintiff, had any knowledge of plaintiff's alleged disability or requests for accommodations at the time he was terminated. Even drawing all reasonable inferences in plaintiff's favor, no evidence shows a causal connection between plaintiff's termination and any actual, perceived, or documented disability.

Finally, I find plaintiff fails to present evidence that defendants denied any request for reasonable accommodation when he requested light duty work. Consequently, plaintiff's disability discrimination claim fails.

### 2. Retaliation

Plaintiff also alleges retaliation under the ADA, arguing that he was terminated because he requested reasonable accommodations. Even though plaintiff has not established a prima facie case of

disability discrimination, the court must still address his retaliation claim. See Heisler v. Metropolitan Council, 339 F.3d 622, 630 n. 5 (8th Cir. 2003) ("the ADA prohibits an employer from retaliating against an employee who seeks an accommodation in good faith").

A prima facie case of retaliation requires a plaintiff to show: "(1) involvement in a protected activity, (2) an adverse employment action and (3) a causal link between the two." Brown v. City of Tucson, 336 F.3d 1181, 1187 (9th Cir. 2003) (citation and internal quotation marks omitted). The plaintiff must present "evidence adequate to create an inference that an employment decision was *based on* an illegal discriminatory criterion." O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 312 (1996) (emphasis modified) (citation and internal punctuation omitted). In other words, plaintiff must establish a link between his request for a reasonable accommodation and his discharge. See id.; see also Brooks v. City of San Mateo, 229 F.3d 917, 928 (9th Cir. 2000).

Plaintiff again fails to establish any causal link between his requests for accommodations and his termination. Plaintiff's most recent request for light-duty work was six months prior to his termination, and plaintiff provides no evidence suggesting that his request for accommodation was a factor in his termination. See Coons v. Sec'y of U.S. Dept. of Treas., 383 F.3d 879, 887 (9th Cir.

20   - OPINION AND ORDER

2004) (distant time between plaintiff's protected activity of requesting reasonable accommodations and the adverse employment action was inadequate to show a causal link). Therefore, plaintiff has not made out a prima facie case for retaliation.

Moreover, defendants present ample evidence of plaintiff's undisputed misconduct and violation of County drug and alcohol policies as a valid reason for termination. Even if the six-month lapse in time between plaintiff's request for accommodation and his termination did not break any perceived causal connection, the intervening event of plaintiff's positive drug test destroys any thread of connection that may have survived summary judgment.

D.   Claims Under 42 U.S.C. § 1983

Pursuant to 42 U.S.C. § 1983, plaintiff alleges that defendants violated his constitutional rights to due process, equal protection, and freedom of speech.

    1.   Due Process

        a.   *Substantive Due Process*

Substantive due process prohibits a government employer from foreclosing an individual's access to a particular profession. Engquist v. Oregon Dept. of Agriculture, 478 F.3d 985, 998 (9th Cir. 2007). However, such a claim is limited to "extreme cases" in which a government effectively blacklisted an individual from his occupation, the result of which was equivalent to banning a person from a profession. Id. at 997-98 ("such a claim is colorable only

in extreme cases").   To meet this high standard, plaintiff must provide evidence that the defendants deprived him of his right to pursue a profession.   Id. at 998.   "It is not enough that the employer's stigmatizing conduct has some adverse effect on the employee's job prospects; instead, the employee must show that the stigmatizing actions make it virtually impossible for the employee to find new employment in his chosen field."   Id. (internal quotation marks and citation omitted).

Plaintiff argues that defendants "blacklisted" him and foreclosed his ability to work with juveniles or youths. Specifically, plaintiff asserts that Fagel's communication to Smith regarding the reason for plaintiff's termination led to plaintiff's subsequent termination from employment with OYA.   This evidence, however, fails to qualify as an "extreme case" under Engquist. Plaintiff fails to show that defendants' actions foreclosed his ability to pursue a profession, and not merely a particular job. Furthermore, Fagel provided an employment reference to a single outside employer, truthfully relating the underlying conduct that led to plaintiff's termination.   Fagel did not blacklist plaintiff, and plaintiff alleges no specific actions that have made it "virtually impossible" for him to find new employment.   See id. at 999.   If plaintiff's drug use has caused him to be unable to find work in his chosen field, that is his own doing, and not the fault of defendants.

b.    *Procedural Due Process*

Plaintiff also alleges Fagel and Sheldon deprived him of his property and liberty interests when they terminated his employment. Procedural due process guarantees are applicable to issues of public employment. Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 572 n. 9 (1972). Although notice and a hearing may not be required in every situation of employment termination, "[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." Wisconsin v. Constantineau, 400 U.S. 433, 437 (1971).

Plaintiff asserts that he was denied procedural due process because the defendants did not proceed with graduating levels of discipline as provided in his labor union's Collective Bargaining Agreement (CBA).[8]  Plaintiff also emphasizes the County's Drug and Alcohol Use Testing Policy which provides that "the County *may* offer regular employees continued employment under the terms of a last chance agreement."  Plaintiff's Ex. 21, p. 10 (emphasis added).

Plaintiff's assertion that he should have been afforded graduated discipline or a "last chance agreement" rather than lose his job misses the point of procedural due process protections. The purpose of procedural due process protections is to ensure that

_____

[8]However, plaintiff does not allege a violation of the CBA.

23    - OPINION AND ORDER

no individual is denied a constitutionally protected interest in liberty or property without an opportunity to be heard.  See Roth, 408 U.S. at 569-70.  It is undisputed that plaintiff was given notice of the allegations against him and was provided a pre-termination hearing in which he spoke on his own behalf.  At the hearing, plaintiff admitted to using methamphetamine, but argued that termination was too severe a punishment.  Defendants nonetheless decided that continued retention of plaintiff was not in their best interest, and permitted him to resign rather than be terminated.  Plaintiff had no protected interest in a progression of discipline, or in receiving a last chance agreement.  Further, the CBA permits the employer to omit steps of progressive discipline "if the employee's misconduct is of such severity that an immediate dismissal action is required," and the County's "last chance" policy is permissive, not mandatory.

Thus, plaintiff fails to raise any issue of material fact as to any alleged violations of procedural due process.

2.  Equal Protection

In support of his equal protection claim, plaintiff asserts the same facts as those alleged in support of his age and disability discrimination claims.  To state a claim under § 1983 for an alleged violation of the Equal Protection Clause of the Fourteenth Amendment, "a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the

24  - OPINION AND ORDER

plaintiff based upon membership in a protected class." <u>Barren v.</u>
<u>Harrington</u>, 152 F.3d 1193, 1194 (9th Cir. 1998).  For the reasons
discussed in the sections on those claims, plaintiff fails to
establish the existence of any genuine issue of material fact as to
this claim.

    3.  <u>Freedom of Speech</u>

    Plaintiff contends that his deposition testimony in the <u>Laird</u>
matter, his tort claim notice, his BOLI complaint, and his
testimony in the hearing regarding his unemployment benefits were
substantial and motivating factors in the County's decision to
terminate his employment and in Fagel's decision to tell OYA
representative Smith about plaintiff's drug use.  "In order to
state a claim against a government employer for violation of the
First Amendment, an employee must show (1) that he or she engaged
in protected speech; (2) that the employer took 'adverse employment
action'; and (3) that his or her speech was a 'substantial or
motivating' factor for the adverse employment action." <u>Coszalter</u>
<u>v. City of Salem</u>, 320 F.3d 968, 973 (9th Cir. 2003).  A plaintiff
can show that his protected speech was a substantial and motivating
factor behind an adverse employment action in three ways: (1)
proximity in time between the protected speech and adverse
employment action; (2) evidence that the employer expressed
opposition to the speech; and (3) evidence that the proffered
explanations for the adverse employment actions were pretextual.

Id. at 977.  Plaintiff's claim fails because he has not produced evidence from which a reasonable trier of fact could find that his protected speech was a substantial and motivating factor in the adverse employment actions.

First, his deposition testimony in Laird was given nearly three years prior to his termination, and he has not presented any evidence that defendants had knowledge of the content of that testimony.  Second, plaintiff's tort claim notice and BOLI complaint were filed after his termination, and therefore could not have been a basis for retaliatory discharge.  Finally, plaintiff's testimony in the unemployment benefits hearing took place after termination and after Fagel spoke with Smith.  Therefore, plaintiff has not raised any issue as to a material fact on this claim.

E.   Whistleblowing Under Oregon Law

Plaintiff alleges that his employment was terminated because he engaged in whistleblower activities.  Or. Rev. Stat. § 659A.203. In support of this claim, plaintiff makes two arguments.  First, plaintiff argues that he was terminated after he complained to Sheldon about the County's illegal application of pesticides. Second, plaintiff alleges that he was subjected to a more extreme disciplinary action than was appropriate because of his complaints of age discrimination.

Under Oregon law, it is unlawful for any employer to "[p]rohibit any employee from disclosing, or take or threaten to

26   - OPINION AND ORDER

take disciplinary action against an employee for the disclosure of
any information the employee reasonably believes is evidence of:

> (A) A violation of any federal or state law, rule or
> regulation by the state, agency or political subdivision;
> (B) Mismanagement, gross waste of funds or abuse of
> authority or substantial and specific danger to public
> health and safety resulting from action of the state,
> agency or political subdivision."

Or. Rev. Stat. § 659A.203(1)(b).

Plaintiff alleges he complained to Sheldon of illegal
pesticide application between 2005 and 2007, with the last
complaint on April 30, 2007. However, plaintiff presents no
evidence of any threats by defendants to take disciplinary action
against plaintiff "for the disclosure" of this information to
Sheldon. The record indicates only that after Sheldon was informed
of the alleged illegal activity, he looked into the matter.
Plaintiff fails to establish a causal connection between the
plaintiff's complaints about pesticide use and his eventual
termination five months later.

Plaintiff also alleges he was terminated in response to his
complaints of disparate treatment due to age. However, plaintiff
produces no evidence that he made protected disclosures or that he
was somehow prevented or discouraged from making protected
disclosures. The only documented complaints in the record are
plaintiff's post-resignation tort claim notice and BOLI charge.
Although these are protected disclosures, plaintiff was not an
"employee" as defined by Or. Rev. Stat. § 659A.200(2) at the time

27   - OPINION AND ORDER

he made the disclosures.   Further, those disclosures were post-termination, and thus could not have been a basis for discharge.

Thus, no issue of material fact remains for trial regarding plaintiff's claim under the Oregon whistleblower statute.

## F.   Common Law Tort Claims

### 1.   Defamation and False Light

#### a.   *Defamation*

Plaintiff alleges he was defamed by defendants when Fagel told the OYA that plaintiff was allowed to resign in lieu of termination after testing positive for methamphetamine.

> The action of defamation is brought by a person who has been libelled or slandered by the utterance of another. To be actionable, the utterance must defame the person bringing the action. Three categories of affirmative defenses are available: (1) the utterance was true; (2) the utterance was absolutely privileged; or (3) the occasion of the utterance was qualifiedly privileged.

Bank of Oregon v. Independent News, Inc., 298 Or. 434, 437, 693 P.2d 35, 38 (1985).   Because it is undisputed that Fagel's statements to Smith were true, I find no issue as to any material fact on this claim.

#### b.   *False Light*

Plaintiff also alleges that Fagel's statements cast plaintiff in a false light and "created a false impression" of him. Defamation and false light are two similar, but distinct claims. Magenis v. Fisher Broadcasting, Inc., 103 Or. App. 555, 558, 798 P.2d 1106 (1990) ("a defamation action is primarily concerned with

damage to reputation, while a claim of false light addresses the plaintiff's interest in being left alone and compensates for mental and emotional suffering resulting from the invasion."). One need not be defamed to bring a false light claim; however, both claims require the plaintiff to prove the false nature of the statements at issue. Id.

Here, no reasonable trier of fact could find that Fagel created a false impression of plaintiff when she communicated truthful information that plaintiff had resigned in lieu of termination after testing positive for methamphetamine. Further, plaintiff fails to show that false material was "publicized." See Marleau v. Truck Ins. Exchange, 333 Or. 82, 93, 37 P.3d 148 (2001) (disclosure of false information regarding a debtor to an individual lender did not constitute "giving publicity"); Tollefson v. Price, 247 Or. 398, 402, 430 P.2d 990 (1967) ("publicity" element requires communication either to public generally or to large number of persons). Having failed to produce evidence supporting his claim, plaintiff's false light claim does not survive summary judgment.

2.    Blacklisting

"Blacklisting" involves the intent to injure a person by preventing future employment. Johnson v. Oregon Stevedoring Co., 128 Or. 121, 139, 270 P. 772 (1928). The relevant Oregon statute prohibits "blacklisting" of terminated employees. See Or. Rev.

29  - OPINION AND ORDER

Stat. § 659.805. "[I]f one is prevented by the wrongful act of a third party from securing some employment he has sought, he suffers a legal wrong, provided he can show that the failure to employ him was the direct and natural consequence of the wrongful act." Johnson, 128 Or. at 135. Dispositive in plaintiff's case is that Fagel committed no "wrongful act" with the intent to injure plaintiff by preventing his ability to obtain future employment.

It is undisputed that the OYA contacted the County for an employment reference for plaintiff. Fagel contacted OYA's Director of Human Services, Glenn Smith, and informed him that she would not provide a reference without a release of information signed by plaintiff. Plaintiff provided the release, and Fagel then gave Smith an accurate account of how plaintiff's employment terminated. Plaintiff fails to produce evidence of a malicious intent or wrongful act. See Johnson, 128 Or. at 127 (no conspiracy to blacklist employees where employer published a list of discharged employees and reason for discharge). Plaintiff's blacklisting claim therefore fails to withstand summary judgment.

### 3.   Wrongful Discharge

A wrongful discharge claim "arises when an employer violates a duty imposed by an established public policy." Schram v. Albertsons, Inc., 146 Or. App. 415, 426, 934 P.2d 483, 490 (1997) (citing Delaney v. Taco Time Int'l., 297 Or. 10, 16-17, 681 P.2d 114, 118(1984)). Generally, claims for wrongful discharge are

30   - OPINION AND ORDER

allowed: "(1) when an employee is fired for performing an important public duty or societal obligation, and (2) when an employee is fired for exercising private statutory rights that relate to the employment and that reflect an important public policy." <u>Ryan v. Patterson Dental Supply, Inc.</u>, 2000 WL 640859, *26-7 (D. Or. 2000).

Plaintiff alleges he was terminated because he complained of the following illegal actions by his employer: age and disability discrimination, interference with FMLA medical leave, and pesticide application by persons not licensed to do so. In addition, plaintiff alleges he was terminated for his deposition testimony on behalf of a former co-worker. For reasons explained above, plaintiff puts forth no admissible evidence supporting a causal connection between his discharge and plaintiff's complaints of discrimination, FMLA interference, or unlawful pesticide use. Given defendants' legitimate reason for discharging plaintiff, no rational trier of fact could find that plaintiff was discharged for protected activity.

G.  Contractual Claims

Plaintiff alleges that defendant Marion County entered into an oral contract with him on September 24, 2007 which included the following terms: 1) plaintiff could resign in lieu of termination; 2) the County would not contest plaintiff's application for unemployment benefits; and 3) the County would provide plaintiff with a neutral reference. Plaintiff claims that defendants

breached their contract and the duty of good faith and fair dealing when they opposed his unemployment benefits and failed to give him a neutral reference.  Defendants agree that plaintiff was permitted to resign in lieu of termination, but deny that they promised no opposition to unemployment benefits or a neutral reference.

In general, the creation of an enforceable contract requires "an agreement between two or more parties competent for that purpose, upon a sufficient consideration, to do or not to do a particular thing which lawfully may be done or omitted." Feenaughty v. Beall, 91 Or. 654, 661, 178 P. 600 (1919).  "A meeting of the minds upon each and all essential elements is indispensable to the creation of a contractual relationship." Kretz v. Howard, 220 Or. 73, 83, 346 P.2d 93, 98 (1959).  Although the meaning of an agreement is a question of fact, Stuart v. Tektronix, Inc., 83 Or. App. 139, 142, 730 P.2d 619 (1986), whether a contract exists is a question of law.  Dalton v. Robert Jahn Corp., 209 Or. App. 120, 132, 146 P.3d 399 (2006).  "In determining whether a contract exists and what its terms are, we examine the parties' objective manifestations of intent, as evidenced by their communications and acts." Id.

Importantly, sufficient consideration must have been provided for a contract to have existed.  State v. Chavez, 211 Or. App. 142, 146, 153 P.3d 175 (2007) ("A promise is enforceable only if it is supported by valuable consideration.").  Plaintiff fails to

32   - OPINION AND ORDER

establish that he gave defendants any consideration. "Consideration is 'the accrual to one party of some right, interest, profit or benefit or some forbearance, detriment, loss or responsibility given, suffered, or undertaken by the other.'" McPhail v. Milwaukie Lumber Co., 165 Or. App. 596, 600-601, 999 P.2d 1144, 1148 (2000) (quoting Shelley v. Portland Tug & Barge Co., 158 Or. 377, 387, 76 P.2d 477 (1938)).

Plaintiff was facing termination of his employment after he tested positive for methamphetamine. At his due process hearing with Fagel, a union representative asked the County to consider allowing plaintiff to resign in lieu of termination. Plaintiff offered nothing in return for this promise from the County; thus, plaintiff requested permission to resign as opposed to seeking an exchange of benefits or rights, or offering a forbearance of some benefit or right. The County did not receive any consideration in return for allowing plaintiff to resign in lieu of termination.[9]

Similarly, plaintiff fails to show that defendants promised to not oppose plaintiff's application for unemployment if he chose to resign. Again, plaintiff did not provide any consideration in exchange for this alleged promise, and therefore a contract did not exist as a matter of law. Furthermore, even if Fagel had made such

---

[9]Even if a contract had existed and the County was bound to allow plaintiff to resign, no breach occurred because plaintiff submitted a letter of resignation and admits that he did in fact resign.

33  - OPINION AND ORDER

a promise, the County could not be bound because Fagel does not have the authority to oppose or not oppose unemployment benefits; that authority rests solely with the Human Resources Manager. <u>See</u> <u>State v. Des Chutes Land Co.</u>, 64 Or. 167, 129 P. 764 (1913) (a contract made by a public officer in excess of actual authority is void because a public officer does not possess apparent authority).

Likewise, plaintiff cannot establish breach of the alleged promise to provide a neutral employment reference, based on the lack of consideration. Moreover, defendants did not breach any alleged promise, because plaintiff signed a release of information, and the information Fagel provided to OYA was accurate and contained no unfavorable opinion of plaintiff.

Because I find no breach of contract, defendants did not breach the duty of good faith and fair dealing.

CONCLUSION

For the reasons set forth above, defendants' Motion for Summary Judgment (doc. 31) is GRANTED, and this case is DISMISSED. IT IS SO ORDERED.

Dated this _17_ day of December, 2009.

> Ann Aiken
> Chief United States District Judge

34    - OPINION AND ORDER